BATTISTINI & MARTÍNEZ, Plaintiff and Appellee, *v.* LUISA FELICIANO, Defendant and Appellant.

No. 6160. Arged June 8, 1933.—Decided July 13, 1934.

*L. Tormes García* for appellant.   *F. Otero Rivera* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the Court.

Battistini & Martínez, through its managing partner Antonio Battistini, brings this action of unlawful detainer at sufferance against Luisa Feliciano, alleging that it is the owner of a rural tract of land of six acres where the defendant has erected a small wooden house, and that it has requested the said defendant to vacate and leave at the plaintiff's unhampered disposal said property and at the same time to take away the house standing thereon.

The defendant denies the facts contained in the complaint and as a special defense alleges that she is the absolute owner of a wooden house located in the ward Duey, of Yauco, on land of her own property and not on land belonging to the plaintiff. She argues that under the circumstances a conflict of titles exists between the parties, which cannot be adjusted in the summary unlawful detainer proceeding. Luisa Feliciano also argues that the complaint does not state facts sufficient to constitute a cause of action. We anticipate to declare that in our opinion the averments set up by the plaintiff support the exercised cause of action.

In the prayer of the complaint it is requested that the defendant should leave at the plaintiff's unhampered disposal the tract of land she occupies and the lot whereon the house stands, and in default thereof, that the defendant, her relatives, servants, and any other person occupying the premises by right of her possession, be ejected.

It appears from the averments and the evidence that the defendant not only occupies the house, but also is retaining the tract of land in its entirety, against the will of the plaintiff. The witness Antonio J. Battistini, manager of the plaintiff, testifies that he has not been able to take possession of the property from the time of its acquisition because of the opposition of Luisa Feliciano, whom he has requested to leave that property at his disposal and who has refused to

vacate the same. As to the title of the land there is no question whatsoever. The evidence adduced by the plaintiff to prove its averments stands, as the defendant has not produced any evidence in rebuttal. Furthermore, the record shows that the defendant admits that the house does not stand on land of her property.

At the close of the plaintiff's evidence, the defendant moved for nonsuit, based on the existence of a conflict of title between the parties "for even though the house is an appurtenant of the land, our Civil Code acknowledges to the person who builds on another's land the right not to be deprived of his property without due compensation if he built in good faith, and such questions cannot be determined in a summary trial like that of unlawful detainer." The defendant also maintains through her attorney that it is incumbent upon the plaintiff to set forth and prove all the controverted questions and that "no evidence has here been brought to show that the land was hers"—meaning the defendant. As may be seen, the attorney for the defendant maintained before the court that no evidence was offered to prove that his client were the owner of the property. The said attorney goes even further in his brief, for he maintains that "it becomes patent from all the evidence that the plaintiff is the owner of the tract of land to which the second averment of the complaint refers, by virtue of the transactions in certain proceedings on judicial sale held in the Municipal Court of Yauco." Thus, in accordance with the evidence, Luisa Feliciano is here occupying a land which is not hers, and also a house the property of which cannot be disputed to her, since it is admitted by the averments of the complaint and the testimony of the plaintiff itself. However, the purpose of the plaintiff to oust the defendant from the house she occupies does not clearly appear either from the averments or the evidence. In the prayer for relief it is requested that both the house and the lot be left at the plaintiff's disposal,

and that the defendant or any other person occupying the premises be ousted.

The agent of the plaintiff, Antonio Bàttistini, tells us that there is no dispute as to the land and that therefore judgment was prayed for in the terms of the answer, namely, that the unlawful detainer be sustained as to the tract of land. The intention of the plaintiff seems to be disclosed in the following statements which we copy from the transcript of the evidence:

"Plff. I am going to briefly state a question which I had discussed with the colleague Tormes, and to see if Tormes's client will consent thereto.

"The complaint purports the vacation of a tract of land of 6 acres, in the Ward Duey of the municipality of Yauco, in accordance with the terms of the complaint, second avernment thereof. Your Honor may see the answer to the complaint. The second averment denies each and every one of the facts of the complaint. And then certain special defenses follow. 'As independent and special defenses, the defendant alleges: 1. That the she is the absolute owner of a one story, wooden house, roofed with zinc, which is located in the Ward Duey of Yauco, said house being independent of any land, and said house standing on land belonging to this defendant, but not on land belonging to the plaintiff.' So that the defendant, in her answer—I am doing this to see if we can dispose of this case in two minutes—has not denied that the property belongs to the plaintiff, but alleges that she is the owner of a house located on other land. To reach an agreement with the colleague Tormes, we had agreed to dispense with the house and that the unlawful detainer be concerned only with the land. Inasmuch as in the answer she States that she is the owner of the house, she does not set up a conflict of title. If the colleague does not object, the court might give us judgment as to the tract of land.

   ✳      ✳      ✳      ✳      ✳      ✳      ✳

"Judge: But this is a case in which the complaint accepts that Battistini & Martínez is the owner of land, and the house is the defendant's. Perhaps this may fall within the del Rosario case. There is no issue here. It is known here, and is stated by the complaint itself, that the land belongs to Battistini & Martínez, and the house is hers. And what is prayed is that the house be taken away from there.

"Plff. No, sir. We pray for a judgment in accordance with the terms of the answer, that is, that the house is hers but that she must leave the land expedite.

"Judge: That she should take the house away.

"Plff. No. She alleges and we admit . . . Your Honor has the answer at hand. We admit that it says: 'That she is the absolute owner of a one story, wooden house, roofed with zinc, which is located in the ward Duey of Yauco, said house being independent of any land, and said house stands on land belonging to this defendant, but not on land belonging to the plaintiff.' So that the only question is whether she should leave the land the object of this action at the plaintiff's unhampered disposal, whether the court should render judgment to the effect of leaving her in the absolute enjoyment of the house which she claims to be hers, and the land at the plaintiff's unhampered disposal.''

There is no doubt whatsoever that the plaintiff has a right to the possession of the land occupied by the defendant and it is clear that it may avail of some remedy to enforce this right. The court cannot refuse to decree an unlawful detainer requested by the lawful owner of the tract of land according to the evidence, and the admissions of the defendant herself, who is retaining the same without any title there-for; but bearing in mind the attitude of the plaintiff mercantile firm with regard to the house, which is defined and made clear in answer to the observations of the judge of the lower court, it is to be assumed that said plaintiff, considering itself morally bound, will allow the defendant to continue occupying the house standing on said tract of land, at least for a reasonable period of time.

The judgment appealed from will be affirmed.

### DISSENTING OPINION OF MR. CHIEF JUSTICE DEL TORO

On February 24, 1931, Battistini & Martínez, a mercantile partnership established in Yauco, Puerto Rico, filed through its attorney, in the District Court of Ponce, a complaint against Luisa Feliciano, for unlawful detainer at sufferance. Said complaint, in its relevant part, reads as follows:

"The plaintiff mercantile firm is the owner of a tract of land described as follows:

" 'RURAL tract of land of six acres more or less, wherein coffee and pastures are planted, located in the Ward Duey of the Municipal District of Yauco, P. R., and is bounded on the North and East by lands of V. Caraballo; on the South by María Irizarry; on the West formerly by Miguel Franqui, today by José Vicario.'

"The defendant has built a small wooden house on the described tract of land.

"III. The plaintiff mercantile firm has requested the defendant Luisa Feliciano to vacate and leave at the plaintiff's unhampered disposal the tract of land which has been described in the second paragraph of this complaint, and at the same time to take away the house standing thereon; and from January 23, 1931, the plaintiff has requested and continued to request the defendant to vacate said tract of land and to take away the house erected thereon, for which she does not pay any rental or other consideration whatever, causing the plaintiff mercantile firm damages with her stubborn refusal.

The first hearing was set for March 6, 1931, and as the defendant did not appear, judgment was rendered against her. Over six months elapsed and on August 24, 1931, the plaintiff asked that the execution of the judgment be ordered. The court granted this and the ejectment is said to have been carried out on August 26, 1931, although the manner thereof is not stated.

At this stage, on September 2, 1931, the plaintiff told the court under oath that after being ousted, the defendant had occupied the property again, and the court set the 11th day of the same month for the defendant to show cause. In fact she appeared personally and declared that she had not been notified of the complaint of unlawful detainer. The court allowed her ten days to engage an attorney and to file a motion to open the case anew.

The motion was filed and the court, after hearing the evidence of both parties in relation thereto, set aside the judgment on October 21, 1931, and directed that the defendant's answer should remain in the record and that the case should

continue to be tried in accordance with the law. The answer, insofar as pertinent, reads thus:

"FIRST.—DEMURRER.—That the complaint in this case does not state facts sufficient to constitute a good and just cause of action in favor of the plaintiff.

"SECOND.—ANSWER.—The defendant denies each and every one of the facts contained in the complaint.

"SPECIAL DEFENSES.—As independent and special defenses, the defendant alleges:

"1.—That she is the absolute owner of a one story, woden house, roofed with zinc, which is located in the ward Duey of Yauco, said house being independent of any land, and said house standing on land belonging to this defendant, but not on land belonging to the plaintiff.

"2.—That under these circumstances a conflict of titles exists between the plaintiff and the defendant, which cannot be adjudicated in these summary unlawful detainer proceedings."

Both parties appeared on October 30, 1931, and offered their evidence. The hearing of the case, namely, the second hearing, was not held until February 16, 1932, by stipulation of the parties. The attorney who represented the defendant at the hearing was not the one who acted as such at the first hearing and by the incidents which took place it can be inferred that he was not well acquainted with the antecedents of the case.

Two days later, the district court rendered judgment against the defendant. By studying the statement of the case and the opinion on which the judgment is based it is observed that the attention of the court was fixed at whether or not the doctrine of this Supreme Court established in *Ermita de Ntra. Señora, etc.,* v. *Collazo,* 41 P.R.R. 594, should be applied to decide the case.

If this were the only question involved, the affirmance of the judgment would probably lie, but by carefully analyzing the case we have found that the documentary evidence offered by the plaintiff at the first hearing to prove its ownership of the property in question was admitted over the defendant's

objection and it is indeed insufficient, nor is the testimonial evidence introduced later at the hearing, sufficient, either. And if this is so, the case falls of its own weight and the judgment must be reversed.

We shall examine the question. We know the complaint. Even though it is vague, we think that it states facts sufficient to constitute the exercised cause of action, that of unlawful detainer at sufferance. We likewise know the answer. It is also vague, but it must be conceded that it denies that the plaintiff is the owner of the property involved, and alleges in a positive way that the defendant is the owner not only of the small house where she lives, but also of the land on which it stands.

The issue being thus joined, the plaintiffs were bound to prove that they were the owners of the land. They adduced therefor the following documentary evidence:

A certificate of the record of the auction sale in the action of debt brought in the Municipal Court of Yauco by Isaac Román against José María López and Luisa Feliciano, from which it appears that the property herein involved was awarded at public auction in execution of the judgment rendered in said action, to the plaintiff Román for the claimed amount of $300, due to the fact that no other bidder appeared.

Another certified copy of the deed executed by the marshal of the Municipal Court of Yauco in favor of the plaintiff wherein it is stated that said marshal received a writ to execute the judgment rendered by the Municipal Court of Yauco in the action brought by the plaintiff against Isaac Román to collect $84.47; that he attached therefor a certain property which is the one object of the unlawful detainer; that he advertised the auction sale of the attached property and, no other bidders having attended, he awarded the same to Battistini & Martínez in payment of its credit, and by virtue thereof, the deed recites textually as follows:

"This Marshal, in his capacity as Marshal of the Municipal Court of the Municipal Judicial District of Yauco, and assuming in law

the right of representation of the defendant Isaac Román, conveys to the commercial entity Battistini y Martínez, by virtue of a judicial sale, all the said defendant's right, title and interest in the tract of and which has been described, for the sum of eighty-four dollars and forty-seven cents to satisfy the claim specified in the writ or order of execution, . . ."

And lastly, the testimony at the hearing of Antonio J. Battistini, managing partner of the plaintiff, which, in its relevant part, states:

They acquired the property which was awarded to them, according to the deed, by virtue of a judgment of the court of Yauco . . . They are the present owners. They have not been able to enjoy the same up to now. Luisa Feliciano has stopped them. They have not been able to take possession. Luisa Feliciano lives a house of her own on the property. When they acquired that property, the house was already there. Isaac Román, against whom they brought an action, appeared to be the owner. Isaac Román acquired from José María López and Luisa Feliciano, in an action decided in his favor. The house belongs to her. It was on the property when he bought. She has lived in the house since they obtained the land. She is a hindrance for the sale of the property or for working thereon. The lady has a bad reputation. The witness apologizes for speaking about her in her absence. Nobody will take charge of the property while she is there. Her house is worth five dollars. Just a little hut. It is an old house. He supposes that the lady built it there since the property was hers. After being the lady's, the property passed to Isaac Román by virtue of a judgment. She has been living the house despite its being awarded to Isaac. She has never moved.

We said that such evidence was insufficient and we think that the mere statement thereof suffices to show the correctness of our conclusion.

It is admitted that the defendant was the owner of the property. It is admitted that she was and continues to be

the owner of the small house in the property. And it is admitted that she is at present in possession of the property and that she never moved from the house thereon standing.

To prove that the defendant lost her right to the ownership of the property, the deed and the record of the auction sale which we know, were produced, the admission of which documents was objected to because they did not by themselves determine that the municipal court had acted with jurisdiction.

Battistini and Martínez did not acquire the property of Luisa Feliciano. If they acquired something, that is what Isaac Román could acquire.

It was not shown that Román took actual possession of the property. On the contrary, from the testimony of the managing partner of the plaintiff partnership in this unlawful detainer proceeding, it is inferred that he never took possession.

By the references to Battistini and Martínez contained in the marshal's deed one does not obtain an exact knowledge as to the manner in which the court acquired jurisdiction over Román and the manner in which the attachment was levied. The property is not recorded in the Registry of Property.

But even accepting that said deed were in itself sufficient evidence of the conveyance of Román's title, it was necessary to prove the latter's title inasmuch as he is not the person intended to be ousted, but Luisa Feliciano, the former owner who continues to be in actual possession of the property.

How did Román acquire from Luisa Feliciano? The only evidence adduced is the copy of the record of the auction sale.

We know nothing with respect to how the municipal court acquired jurisdiction over the person of Luisa Feliciano or as to how the judgment was rendered, and above all, it does

not appear that the marshal executed a deed in favor of Román in the name of Luisa Feliciano.

By the time the events took place, the Act of March 9, 1905, which repealed Sections 259 to 266 of the Code of Civil Procedure, was in force as it still is, and it provided in its Section 5:

"When immovable property is sold by the marshal, or other duly authorized officer, at public sale, under an execution or order of sale, issued by a court, it shall be the duty of such marshal or other officer to execute to the purchaser at such sale, a good and sufficient deed for such property, and the costs of making such deed shall be paid by such purchaser." Code of Civil Procedure, 1933 Ed., p. 120.

And it has been held that:

"The delivery and acceptance of the sheriff's deed are essential to its validity. Title of the land remains in the debtor until the deed is delivered to the purchaser. . . . .

.   .   .   .   .   .   .   .   .   .   .

"Though for many purposes the title of the purchaser at an execution sale of land is as well protected before as after the receipts of the sheriff's deed, the legal title does not pass to the purchaser until the delivery of the deed." 10 R.C.L. 1358, 1359.

The plaintiff not having properly shown that it is the owner of the property involved, it has not evinced any right to the unlawful detainer and by virtue thereof the judgment appealed from must be reversed and another one rendered dismissing the complaint, with costs, including attorney's fees in an amount not exceeding fifty dollars.

Mr. Justice Hutchison agrees with this dissenting opinion.